# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MALIK NASIR,                         :
                                     :        C.A. No.: K16M-03-005 JJC
            PETITIONER,              :
                                     :
      v.                             :
                                     :
STATE OF DELAWARE,                   :
                                     :
            RESPONDENT.              :

Submitted: April 8, 2024
Decided:   May 14, 2024

## ORDER

On this 14th day of May 2024, having considering Petitioner Malik Nasir's appeal of a Commissioner's Order denying his petition to return property, and the State's opposition, it appears that:

1.     The State seized currency and jewelry from Mr. Nasir in conjunction with his arrest for serious drug related felonies.   Mr. Nasir filed a petition seeking return of property pursuant to 16 *Del. C.* §4784.   A commissioner of this Court held a trial to resolve Mr. Nasir's petition on May 9, 2023.   She later issued an order pursuant to Superior Court Civil Rule 132(a)(4) (the "Order," attached as Exhibit A) that contained her proposed findings of fact and recommendations.   In her post-trial Order, she made detailed findings of fact, explained her credibility determinations, and denied Mr. Nasir's petition for return of property.

2.     Rule 132(a)(4) permits Mr. Nasir to file written objections to the Order and to appeal the case dispositive findings and recommendations of the

Commissioner.[1]  Upon receipt of the appeal and a transcript of the proceedings, a reviewing judge must undertake a *de novo* review of the portions of the report and findings of fact that are the subject of the party's objections.[2]

3.      Here, Mr. Nasir filed a motion for reconsideration of the Order which operates as an appeal pursuant to Rule 132(a)(4)(iii).  He provided no new objections to the Order;  rather, with his appeal, he included his response to the State's opening brief that he had previously filed with the Commissioner.  That document included his original post-trial arguments before the Commissioner.  When providing Mr. Nasir deference as a self-represented litigant, the Court will consider the arguments he raised in the brief as if he had raised them separately through written exceptions. After considering them, the Court has made a *de novo* determinations as to each.

4.      First, Mr. Nasir filed his petition for return of property in this Court. Nevertheless, he contends that the Superior Court has no jurisdiction to consider his civil petition.  He also asserts that the Superior Court is the improper venue to consider his petition.   At the outset, Mr. Nasir misunderstands that the Superior Court has statutory jurisdiction over the matter and that Kent County is the proper venue to determine whether the property seized by the State should be returned to him.  The Superior Court is a unified, State-wide Court, with jurisdiction to consider his case pursuant to 16 *Del.C.* §4784.  Given the Court's statutory jurisdiction over the matter, the Commissioner committed no legal error in deciding his case. Furthermore, he is mistaken in his contention that the State of Delaware lost the right to seize his property and to retain it when the federal  authorities prosecuted and convicted him of serious drug felonies.  Those felonies could have been prosecuted in State court, Federal court, or both.  The Commissioner correctly recognized that the seizure of his property and his petition are civil matters that do not turn on where

---

[1] Super. Ct. Civ. R. 132(a)(4)(ii).
[2] *Id.* at  132(a)(4)(iii.).

he was prosecuted.   In other words, the State's decision to forbear prosecution in favor of the federal government did not divest the State of its authority to seize his property pursuant to 16 *Del.C.* §4784(a).  Nor did that decision divest the Court of the jurisdiction necessary to adjudicate whether that property must be returned to him.

5.      Second, Mr. Nasir challenges the sufficiency of the evidence to support the Commissioner's findings of fact.   He contends that the evidence at trial demonstrated by a preponderance of the evidence that the seizure was unlawful.  The Court, after performing a *de novo* review of the record, begins with the recognition that the Commissioner's Order demonstrates that she applied the proper standards. Furthermore, in her detailed written Order, she explained why she found Mr. Nasir to not be credible based upon (1) discrepancies in his statements, and (2) the documentary evidence presented at trial.   Her findings of fact were orderly, logical, based upon the evidence, and correct.

**WHEREFORE**,  after *de novo* consideration of Petitioner Nasir's objections to the Order, the Court **ADOPTS** the Commissioner's Order of December 6, 2023, attached as Exhibit A, in its entirety.   For the reasons explained in her Order and those discussed above, his petition for return of property is **DENIED.**


**IT IS SO ORDERED.**


/s/ Jeffrey J Clark
Resident Judge

# EXHIBIT

# A

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MALIK NASIR              :
                                     :

v.                          :         I.D. No. K16M-03-005
                                       :         In and For Kent County

STATE OF DELAWARE     :
                                       :

## COMMISSIONER'S ORDER

### Upon Petition for Return of Property
### *Denied*

John W. Donahue, Esq., Deputy Attorney General, Wilmington, Delaware, for the State *of Delaware*

Malik Nasir*, pro se*

FREUD, Commissioner
December 6, 2023

       Malik Nasir ("Petitioner") has filed a Petition for Return of Property pursuant to 16 *Del. C.* § 4784 and Superior Court Civil Rule 71.3. The property sought to be returned is Miscellaneous Jewelry (one pair of earrings, one watch, three necklaces, two rings, one bracelet); one 2009 Dodge Charger[3]; $20,762.43 United States Currency (hereinafter "USC") seized from Dover Federal Credit Union account; $5,000.00 USC; and $363.00 USC, seized by the Delaware State Police on or about

---

[3] This vehicle was voluntarily returned be the Delaware State Police for administrative, and not evidentiary, purposes prior to this proceeding. *See* Trial Transcript pg. 100.

December 22, 2015, pursuant to 16 *Del. C.* § 4784. The Petition was referred to the Delaware Superior Court Commissioner pursuant to Superior Court Civil Rule 132 (a)(3).

For the reasons below, I deny the Petition.[4]

## FACTS

The drug investigation into Petitioner culminated with a search, by Delaware State Police ("DSP"), of a storage unit rented by Petitioner on 1502 East Lebanon Road, Dover, Delaware.[5] Within that storage unit, DSP located coolers filled with Marijuana, drug packaging material, digital scales, and air freshener cans.[6] Four digital scales were found within one cooler, as well as zip-lock baggies.[7] Marijuana was located in two separate coolers. A 48-quart blue and white cooler contained one 47-gram bag of marijuana, one 119-gram bag of marijuana and one 177-gram bag of marijuana. The total weight of marijuana from that cooler was 343-grams.[8] A red and white, 40-quart cooler contained six (6) large bags of marijuana; one (1) bag weighing 456-grams, one (1) bag weighing 458-grams, and four (4) bags weighing

---

[4] In its opening brief, the State noted that the 2009 Dodge Charger had been previously returned to a representative of the Petitioner. The State also agreed to return to the Petitioner the $20,762.43 and $363.00 in United States Currency previously seized. Therefore, the only items still in dispute and subject to this order are the $5,000.00 in USC, and the miscellaneous jewelry seized from the Petitioner.

[5] *See* Transcript, p. 9-10.

[6] *See* Transcript, p. 11.

[7] *See Id*.

[8] *See* Transcript, p. 12.

457-grams. The total weight of marijuana found in that cooler was 2,747-grams. In that cooler, six (6) approximately1 lb. bags of marijuana were located.[9]

Petitioner arrived at the storage facility at the time of the search in a 2010 Mercury Mariner. The Mariner was searched and "a couple" of cell phones were located, along with the key to the storage unit and a small container with two and a half (2 ½)-grams of marijuana inside.[10]

Subsequent to the search of the storage facility, Petitioner's residence, at 12 Ediman Court, Dover, Delaware, was searched pursuant to a warrant. Inside, $5,000.00 USC was seized, which had been broken down into five (5) bundles, each containing $1,000.00. Various receipts and documents with Petitioner's name were located, as well as the key to the 2009 Dodge Charger. A Home Depot bucket, which was identical to a bucket located in the storage facility was located in Petitioner's garage. The bucket from the storage facility contained drug residue on the inside; the bucket located in Petitioner's garage contained a 14-gram bag of marijuana.[11] The jewelry seized from Petitioner was all from his person, however various receipts from Kay Jewelers were located in Petitioner's bedroom.[12] Bank account documents of Petitioner were also seized from his residence, which led to the seizure of his Delaware Federal Credit Union account containing $20,762.43. Petitioner was found

---

[9] *See Id.*
[10] *See* Transcript, p. 14.
[11] *See* Transcript, p. 15-16.
[12] *See* Transcript, p. 19.

to not be employed, but to be collecting unemployment checks from the State of Delaware.[13]

Petitioner was tried and convicted in the District Court of Delaware for the aforementioned drug offenses. Petitioner's conviction was upheld on appeal.[14]

## ANALYSIS

Petitioner has lodged a threshold challenge to the viability of this forfeiture proceeding claiming the State cannot proceed on the civil forfeiture action because the related criminal prosecution, although instigated by the State Police was subsequently transferred to the Federal authorities for prosecution. Petitioner is incorrect. An examination of 16 *Del. C.* § 4784, including the statute's history and related case law, reveals that a criminal charge or conviction is not necessary for the State to proceed with civil forfeiture. I note that Petitioner was convicted of drug offenses at the Federal level and he is not challenging that conviction. His argument spears to simply be that the incorrect jurisdiction is seeking to forfeit his property. While the criminal action and civil forfeiture proceedings may appear related at first glance, in reality, they are entirely different proceedings with distinct objectives and standards of proof.

---

[13] *See* Transcript, p. 21.
[14] *United States v. Nasir*, 17 F.4th 459 (3d. Cir. 2021) (sentencing enhancement provision later reversed.)

The Supreme Court of Delaware examined the constitutionality of 16 *Del. C.* § 4784 in *In re 1982 Honda, Delaware Registration no 83466.*[15] In their decision, the Court upheld the constitutionality of the statute and noted the similarity in construction between the Delaware statute and 21 U.S.C. § 881(a), the federal civil forfeiture statute.[16] In so doing, the Court looked to a United States Supreme Court decision regarding 21 U.S.C. § 881(a) when reaching their decision.[17] The approach taken by the *In re 1992 Honda* Court was consistent with the history of Delaware courts looking to the federal courts for guidance in their analysis of 16 *Del. C.* § 4784.[18] Specifically, *1982 Honda*, the court held:

> Civil *in rem* forfeitures are not criminal in nature and do not constitute punishment. Accordingly, the institution of civil forfeiture proceedings, either prior to or subsequent to the prosecution of criminal proceedings involving the same party and the same subject matter, implicates neither Double Jeopardy Clause of the United States Constitution nor the comparable protection afforded by Article I, section 8, of the Delaware Constitution.[19]

This civil *in rem* distinction was recognized early in our nation's history and is viewed independently of any parallel criminal charges.[20]

---

[15] 681 A.2d 1035 (Del.1996).
[16] *Id*. at 1036.
[17] *Id. (citing United States v. Ursery*, 518 U.S. 267 (1996).
[18] *See In the Matter of: One 1987 Toyota*, 621 A.2d 796 (Del. Super. Ct. 1992); *See also Matter of One 1985 Mercedes Benz Auto*., 644 A.2d 426, 427 (Del. Super. Ct. 1992).
[19] *In re 1982 Honda*, 681 A.2d at 1036.
[20] The Palmyra, 25 U.S. 1 (1827).

In 1827, the Supreme Court decided the case of The Palmyra.[21] The decision in this case described the difference of Civil proceedings *in rem*, versus criminal proceedings *in personam*.[22] Forfeitures by statute created *in rem* proceedings where the object is "primarily considered as the offender, or rather the offence is attached primarily to the thing; and this, whether the offense be *malum prohibitum*, or *malum in se*."[23] The Court stated:

> Many cases exist, where there is both a forfeiture *in rem* and a personal penalty. But in neither class of cases has it ever been decided that the prosecutions were dependent upon each other. But the practice has been, and so this Court understand the law to be, that the proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceedings *in personam*…In the judgment of this Court, no personal conviction of the offender is necessary to enforce a forfeiture *in rem* in cases of this nature.[24]

More than 150 years later, the United States Supreme Court (hereinafter "USSC") again addressed the distinction of *in rem* forfeiture proceedings and *in personam* criminal actions in *United States v. Ursery*.[25] The Court rejected a double jeopardy argument, holding *in rem* forfeiture proceedings are distinct from any parallel criminal action.[26] "*In rem* civil forfeiture is a remedial civil sanctions, distinct from potentially punitive *in personam* civil penalties such as fines, and does

---

[21] *Id.*
[22] *Id.* at 14.
[23] *Id.*
[24] *Id.* at 12-45.
[25] 518 U.S. 267 (1996).
[26] *Id.* at 268.

not constitute a punishment for double jeopardy purposes."[27] Further the USSC has found that even "an acquittal in a criminal trial does not bar a civil action for forfeiture even though based on the identical facts."[28] In its ruling, the USSC recognized the different burden of proof standards the State must meet when dealing with civil *in rem* proceedings versus a criminal *in personam* action.[29]

The Delaware civil forfeiture statute, 16 *Del. C*. § 4784, creates a statutory *in rem* forfeiture action just as its federal counterpart.[30] This statute targets the property used or received in violation of Title 16.[31] Unlike the burden of proof required in a criminal case, the state must only demonstrate probable cause the property was used in violation of the chapter or is dangerous to health of safety.[32] There is no statutory requirement within 16 *Del. C*. §4784 that an arrest must accompany a forfeiture proceeding. Moreover, Delaware courts have recognized "an acquittal or dismissal of charges in a criminal proceeding does not preclude civil proceedings pursuant to Superior Court Civil Rule 71.3."[33]

The distinction between *in rem* civil forfeitures in accordance with 16 *Del. C*. § 4784 and any criminal proceeding, or lack thereof, allows the State to proceed with

---

[27] *Id.*
[28] *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361 (1984).
[29] *Id.* at 359 (*quoting Helvering v. Mitchell,* 303 U.S. 391, 397 (1938)).
[30] *In re 1982 Honda, Delaware Registration No. 83466*, 681 A.2d 1035, 1036 (Del. 1996).
[31] 16 *Del. C.* §4784 (a)
[32] 16 *Del. C.* §4784 (c)
[33] *State v. Worley*, 2019 WL 169427, at *2 (Del. Super. Ct. Jan 11, 2019) (*quoting Matter of $13,584.00 in United States Currency,* No. CV K17M-08-008 WLW, 2018 WL 6839753, at *3 (Del. Super. Ct. Dec. 28, 2018)).

civil forfeitures regardless of the status of any parallel criminal action. Further, the statute allows for a forfeiture proceeding even where: 1) No criminal charges were ultimately filed, or 2) the criminal charges were *nolle prossed,* dismissed, or resulted in an acquittal. In sum, forfeiture under 16 *Del. C.* § 4784 are civil in nature and as such, have a lower burden of proof and do not require a criminal conviction. Therefore, the State may proceed here where the criminal charges were pursued and successfully prosecuted in federal court.

The Delaware Forfeiture of Drug Profits Act ("Forfeiture Act") authorizes the State to seize and forfeit various property associated with the trade in illegal drugs for the purpose of crippling the trafficking and sale of such drugs.[34] In a forfeiture proceeding, the State has the initial burden of proving that probable cause exists for the institution of a forfeiture.[35] "Once the government has met its burden of showing probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property was not subject to forfeiture."[36]

With specific regard to currency, the Forfeiture Act authorizes the forfeiture of "moneys… furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia in violation of [The Controlled Substances Act]; all profits or proceeds traceable to securities, assets or interest used, or intended to be

---

[34] *In re One 1987 Toyota*, 621 A.2d 796 (Del. Super. 1992).
[35] *In re One 1985 Mercedes Benz Automobile,* 644 A.2d 426 (Del. Super. 1992)
[36] *One 1987 Toyota,* 621 A.2d at 799.

used, to facilitate any violation of [The Controlled Substances Act]"[37] More particularly, the Forfeiture Act provides that "All moneys…found in close proximity to forfeitable controlled substances …are presumed to be forfeitable under [The Controlled Substances Act]."[38]

To commence a forfeiture proceeding, the State must first establish that it has probable cause to believe that the money seized was to be used in the trade of illicit drugs or drug paraphernalia.[39] "Generally, probable cause in a forfeiture action is "a reasonable ground for belief of guilty, supported by less than prima facie proof but more than mere suspicion."[40] This "reasonable ground for belief of guilt" may be based upon the totality of the circumstances known to the officers at the time of seizures who are on the scene.[41] To demonstrate probable cause, the "the government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence of substantial connection to drug dealing. The government must merely

---

[37] 16 *Del. C.* § 4784 (a)(7). Section 4784 (a)(7) states:
    (a)  The following shall be subject to forfeiture to the State and no Property rights shall exist in them:
        (7)  All moneys, negotiable instruments, securities or any other thing of value furnished, or intended to be furnished, in exchange for a controlled substance of drug paraphernalia in violation of this chapter; all profits or proceeds traceable to securities, assets or interest used, or intended to be used, to facilitate any violation of this chapter. However, no property interest or any owner, by reason or any act or omission established by the owner to be committed or omitted without the owner's knowledge or consent shall be forfeited in the items listed in this paragraph:
        (a)  All moneys, negotiable instruments or securities found in close proximity to forfeitable controlled substances, or to forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be forfeitable under this paragraph. The burden of proof is upon Petitioner of the property to rebut this presumption.
[38] 16 *Del. C.* § 4784 (a)(7)a.
[39] *One 1985 Mercedes Benz Auto*, 644 A.2d 423, 428 (Del. Super. 1992).
[40] *Id.* (quoting *One 1987 Toyota*, 621 A.2d at 799).
[41] *$5,662 U.S. Currency,* 712 A.2d 106, 111 (Del. Super. 1998).

furnish probable cause, i.e., reasonable grounds to believe that a substantial connection exists between the money seized and [claimant's] drug dealing.[42] Further, "probable cause may be based wholly on circumstantial evidence."[43] The Delaware Superior Court has held that where officers find drugs and drug paraphernalia, such as an electronic scale, baggies, etc., that those officers had probable to believe that the case found in close proximity to these items was "moneys… furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia…"[44]

Moreover, the State need not provide conclusive proof that the money was connected to a drug offense.[45] "The Government's task is to present only enough evidence to shift the burden of proof to the Claimant."[46] Once the State meets its initial burden, the onus then shifts to the Petitioner to show 1) a valid interest in the monies seized (standing) and 2) that the money was "unlawfully seized or not subject to forfeiture."[47]

I find the State has clearly met its burden and now, the focus shifts to the Petitioner to first establish standing to bring a claim to the money and then to

---

[42] *$5,662 U.S. Currency*, 714 A.2d at 113, quoting *U.S. v. $41,305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir. 1984)

[43] *Id.*

[44] 16 *Del. C.* § 4784 (a)(7); *In re $5,662 U.S. Currency*, 714 A.2d at 111-112.

[45] *Id.*

[46] *Id.*

[47] *Matter of $25,640.00 in United States Currency,* 2018 WL 4705509 *4 (Del. Super.), *citing In re $5,662 U.S. Currency,* at 110.

demonstrate by a preponderance of the evidence that "the money was unlawfully seized or not subject for forfeiture."[48] The Petitioner must show that he has standing to challenge the forfeiture proceeding by proving that he has lawful possessory interest in the seized property.[49] The standard to establish standing, therefore, is relatively low. In the case at hand, Petitioner has claimed that he is the rightful owner of the money and jewelry. I find that Petitioner's allegation that the money and the jewelry were his along with the fact that no one else has stepped forward to claim them, it is sufficient to meet his burden as far as standing to contest the forfeiture.

Despite having standing, Petitioner has clearly not satisfied the greater burden of proof in demonstrating by a preponderance of the evidence that they money was unlawfully seized and/or that it is not subject to forfeiture. In order to demonstrate that the money was not subject to forfeiture the Petitioner would have had to show "by a preponderance of the evidence that there was an alternate source of funds."[50] The Delaware Supreme Court has defined "preponderance of evidence" to mean the side on which "the greater weight of evidence is found."[51] The Delaware Superior Court has adopted the Eleventh Circuit's requirement that "where the government has presented evidence of an illegal source, the claimant must do more than show

---

[48] $5,662 U.S. Currency, 714 A2d at 110.
[49] Id.
[50] Id. at 113, quoting *$41,305.00 in Currency & Traveler's Checks,* 802 F.2d at 1339.
[51] *Taylor v. State,* 2000 WL 313501, at *2 (Del. 2000), quoting *Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del. 1967).

the existence of possible legitimate sources of cash."[52] The mere possibility of an innocent source of the money, for example, would not satisfy the preponderance of evidence standard.[53] Insufficient showings of possible legitimate sources include presenting "some evidence of legal income approximating the seized amount"[54] and offering evidence of IRS forms in an attempt to show that the money came from gambling.[55] This high standard was elucidated in *Matter of $5,662,* where the petitioner claimed that the seized money was from legitimate sources, including his wife's employment and an insurance settlement.[56] There, the Court found that other than two insurance settlement form letters, the petitioner failed to offer any reliable follow-up documentation of his claims to the money or any other corroborating evidence. Thus, the Delaware Superior Court found that the petitioner had not met his burden of proof.[57] Petitioner attempts to meet his burden by providing bank statements, etc., to show that there was an alternate source for the funds.

Delaware State Police seized $5,000 USC wrapped in one-thousand-dollar bundles form Petitioner's bedroom. When asked about the source of the $5,000, Petitioner gave several possible sources of this money. First, Petitioner claimed it was money he earned as documented in his W-2s. Then further questioned,

---

[52] *$41,305.00 in Currency & Traveler's Checks*, 802 F.2d at 1344-45.
[53] Id. at 1345.
[54] *Brown,* 721 A.2d at 1265.
[55] *In re $1,800.00 in U.S. Currency,* 2002 WL 433024 (Del. Super.)
[56] *$5,662 U.S. Currency*, 714 A.2d at 110.
[57] *Id.* at 113.

Petitioner admitted that he's "a hustler."[58] Petitioner admitted he was working under the table,[59] and he ultimately never provided any legitimate source for the $5,000, nor did he provide an explanation why the $5,000 cash was wrapped in $1,000 bundles. No explanation was provided why the money was not in one of his bank accounts, nor did Petitioner provide any paycheck stubs, cashed checks, or any other legitimate source of the $5,000. It is widely recognized that drug dealers often carry large sums of cash.[60] Moreover, it's well known that drug dealers typically package their money in $1,000 increments for drug dealing purchases so they know exactly how much money they have and can execute drug deals as quickly as possible.

The evidence presented at trial establishes that Petitioner has not been forthcoming about his finances and has failed to provide his complete banking information to rebut the State's evidence. In addition to the DFCU account, Petitioner acknowledged having accounts with PNC and Wells Fargo, yet did not provide any information related to these accounts. When confronted about credit card accounts, Petitioner simply responded with "I plead the fifth [Amendment]."[61]

Petitioner relied heavily throughout the trial on general assertions that the seized money is from his prior employment as documented in his W-2. However,

---

[58] *See* trial transcript p. 150.
[59] *Id*.
[60] *In re $5,662 U.S. Currency,* 714 A.2d106, 111(Del. Super. 1998). *See Jennings v. State,* Ind. App., 553 N.E.2d 191, 193 (1990); *People v. 1984 BMW 528E Auto,,* 208 Ill. App 3d 930, 153 Ill. Dec. 696, 567 N.E.2d 654, 658 (1991).
[61] *See* trial transcript p. 105.

Petitioner's W-2 for 2015 shows that he only earned $6,228.00. Of which $5,652.00 was from unemployment benefits. According to the Petitioner, the majority of the unemployment funds were deposited into the DFCU account.[62] In 2014, Petitioner's W-2 indicates that he earned $10,931.00. And according to the Petitioner, he purchased the Dodge Charger in 2014 for $6,360.00. Petitioner's non-specific and general reliance on his W-2s simply does not mathematically add up. When confronted throughout trial about the sources of money used for his payments, Petitioner gave differing responses such as stating, he was a hustler, worked under the table,[63] gambled,[64] the money came from everywhere,[65] and even stated that the money came from God and God's green earth.[66] Petitioner provided no specific or legitimate source of the $5,000.00 or explanation for its packaging.

Again, while the State concedes the deposits into the DFCU account are from legitimate sources, it is extremely unusual that there are only five withdrawals from the account from July 3, 2014, through December 31, 2015.[67] The account information provided by Petitioner shows a starting balance of $443.57 on July 3, 2014. Petitioner continued to deposit miscellaneous checks and the majority of his unemployment payments through December 31, 2015, growing the account from

---

[62] *See* trial transcript p. 114.
[63] *See* trial transcript p. 150.
[64] *See* trial transcript p. 122.
[65] *See* trial transcript p. 131.
[66] *See* trial transcript p. 138.
[67] The State seized the $20,762.43 from DFCU account on or about January 5, 2016

$443.57 to $20,762.43. it is incomprehensible and unreasonable that during that time frame there are only five withdrawals: (1) March 17, 2015, in the amount of $111.89, for what appears to be a reservation in Myrtle Beach, (2) July 24, 2015, in the amount of $290.23 for an auto loan payment associated with the account, (3) October 12, 2015, in the amount of $500.00 for unknown purposes, (4) October 13, 2015, in the amount of $46.37 payable to "Straighttalk" and (5) December 31, 2015, in the amount of $166.04, payable to Allstate. There are no other withdrawals, purchases, automatic payment, or cost of living expenses, food expenses, gas expenses, etc. withdrawn from this account during that entire period of time.

It is unreasonable to assume that Petitioner's sole sources of payment for daily life activities is from the DFCU account. Any argument by Petitioner to the contrary is simply not credible. Petitioner admitted having two cars, yet Petitioner's account information shows no documentation of car insurance payments except for one payment in December 2015. Petitioner's account information shows no payments for gas or maintenance of vehicles. Petitioner's account information shows no payments for the two cell phones that were seized from him with the exception of one payment to "Straighttalk" in October 2015. There are no food purchases. There are not restaurant purchases. There are no grocery store purchases. There are no typical standard of living expenses in the records provided by Petitioner.

In addition to the lack of typical withdrawals, the DFCU records show numerous payments were made to car loan accounts associated with Petitioner's DFCU account. It appears the first loan originated in March 2015 and the second loan originated on October 28, 2015. Payments to these loan accounts are documented in the DFCU records as follows: (1) April 24, 2015, in the amount of $290.23, (2) May 21, 2015, in the amount of $291.00. (3) June 24, 2015, in the amount of $290.25, (4) July 24, 2015, in the amount of $290.23,[68] (5) August 24, 2015, in the amount of $291.00, (6) September 24, 2015, in the amount of $291.00, (7) October 26, 2015, in the amount of $1,000.00, and (8) November 25, 2015, In the amount of $1,000.00. With exception of July 24, 2015, payment in the amount of $290.23, none of these payments are documented as coming from the DFCU account.

In addition to these undocumented loan payments on the other vehicles outlined above, Petitioner also acknowledged paying $6,360.00 for a Dodge Charger in 2014.[69]

Petitioner admitted having a PNC back account and Wells Fargo accounts as well, however, did not provide any records related to those accounts.[70] According to the PNC statement for the period of September 12, 2015 – October 13, 2015, which

---

[68] This appears to be the only car payment that was withdrawn from the DFCU account.
[69] *See* trial transcript pgs. 143-144.
[70] The PNC records were seized during the search of Nasir's residence. *See* trial transcript p. 21.

was seized from Petitioner's home by the police, the records indicated an initial balance of $5,387.20. The records show two purchases and a withdrawal and an ending balance of $2,379.66. The purchases occurred on September 28, 2015, in the amount of $19.99 and October 6, 2015, in the amount of $37.59. The withdrawal occurred on October 13, 2015, in the amount of $2,950.00. Petitioner was able to recall the withdrawal of $2,950.00, but could not remember the purpose of the withdrawal, nor could he remember where the money went.[71] The Court can only assume that by not providing information related to those accounts, the Petitioner intended to hide other assets and/or spending habits.

As demonstrated by the testimony of Lt. Skinner and Sgt. Vernon, drug dealing is a very lucrative business. Even though Skinner and Vernon offered differing estimates of the value of the marijuana, even taking the lowest valuation offered, Petitioner would have been able to make a significant amount of money by purchasing large quantities and then selling smaller quantities. Essentially, Petitioner could have doubled his money by purchasing a pound of marijuana and then breaking it down and selling it by the quarter pound.[72] This would account for Petitioner accumulating large sums of cash to be used for daily living expenses and loan payments. Clearly, Petitioner would want to keep this cash on hand as opposed

---

[71] *See* trial transcript pgs. 103-104.
[72] *See* trial transcript pgs. 55-56.

to depositing proceeds of drug sales into a bank account which would create a paper trail that he would not be able to document.

As part of their investigation and the arrest of Petitioner, DSP seized one pair of earrings, one Gucci watch, three necklaces, two rings, and one bracelet from Petitioner under the established belief that these were proceeds of Petitioner's crime. At trial Petitioner testified that he could not remember how he paid for the jewelry.[73] Petitioner did not specify how he purchased these items, nor did he provide any documentation of the source of the money used. Petitioner claimed he had an account with Kay Jewelers and that "most of the jewelry came from them [Kay Jewelers]."[74] However, Petitioner did not identify which items were from Kay Jewelers nor did Petitioner document which items, if any, were part of the Kay Jewelers account. On cross-examination, Petitioner claimed someone gave him the Gucci watch. However, Petitioner provided no documentation or witness testimony in support of his assertion.[75] Sgt. Vernon testified that he contacted Kay Jewelers and learned they did not sell Gucci.

Petitioner acknowledged making payments to Kay Jewelers on December 26, 2014, in the amounts of $105.00, on January 30, 2015, in the amount of $279.00 and $1,000.00 on October 27, 2015. There is no record of these payments coming from

---

[73] *See* trial transcript p. 94.
[74] *Id.*
[75] *See* trial transcript p. 154.

DFCU account, nor did Petitioner specify the source of the payments. When asked on cross-examination, if the $1,000.00 cash payment to Kay Jewelers on October 27, 2015, was from the money saved over the years. Petitioner responded, "plus other things I do."[76] Petitioner's lack of documentation and general assertions, without support, along with the evidence adduced from the DFCU account, are insufficient to meet his burden.

In considering the totality of the circumstances, as outlined, above, the State has met its burden of establishing probable cause that the $5,000.00 USC and jewelry are subject to forfeiture under 16 *Del.C.* § 4784 and the Petitioner has failed to meet his burden.

Given that Petitioner was found guilty of Maintaining a Premises for Manufacturing, Distributing or Using Marijuana, (21 U.S.C. § 856 (a)(1) and (b)); Possess with Intent to Distributed Marijuana, (21 U.S.C. § 841 (a)(1)) and (b)(1)(D); and Possession of a Firearm by a Prohibited Person, (18 U.S.C. § 922 (g)(1) and § 924 (a)(2)), in Federal Court and the fact that a large quantity of illegal drugs were found, Petitioner has not met his burden of proof. The facts presented by the State were sufficient to support the forfeiture of the cash. Petitioner's evidence is clearly insufficient to rebut the presumption.

## CONCLUSION

---

[76] *See* trial transcript p. 153.

After hearing testimony and reviewing the evidence presented, consideration of the briefing, reviewing both the criminal and civil files, and reviewing the applicable authority, it is my finding that the State has established probable cause to have initiated the forfeiture proceeding, and that the Petitioner has not met his burden to rebut the presumption in favor of the forfeiture. Therefore, I *DENY* the Petition for Return of Property. The $5,000 USC and the miscellaneous jewelry will be forfeited to the State.

<u>Andrea M. Freud</u>
Commissioner

AMF/jan
oc:   Prothonotary
cc:   John W. Donahue, DAG
       Malik Nasir